**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| ANGEL N. R., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 18-CV-544-CVE-JFJ |
| | ) | |
| ANDREW M. SAUL, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

This matter is before the undersigned United States Magistrate Judge for a report and recommendation.  Plaintiff Angel N. R. seeks judicial review of the Commissioner of the Social Security Administration's decision finding that she is not disabled.  For the reasons explained below, the undersigned **RECOMMENDS** that the Commissioner's decision denying benefits be **AFFIRMED**.

## I.    General Legal Standards and Standard of Review

A claimant for disability benefits bears the burden of proving a disability.  42 U.S.C. § 423(d)(5); 20 C.F.R. §§ 404.1512(a), 416.912(a).  "Disabled" is defined under the Social Security Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  To meet this burden, a plaintiff must provide medical evidence demonstrating an impairment and the severity of that impairment during the time of his alleged disability.  20 C.F.R. §§ 404.1512(b), 416.912(b).  A disability is a physical or mental impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically

acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A medically determinable impairment must be established by "objective medical evidence," such as medical signs and laboratory findings, from an "acceptable medical source," such as a licensed and certified psychologist or licensed physician; the plaintiff's own "statement of symptoms, a diagnosis, or a medical opinion is not sufficient to establish the existence of an impairment(s)." 20 C.F.R. §§ 404.1521, 416.921. *See* 20 C.F.R. §§ 404.1502(a), 404.1513(a), 416.902(a), 416.913(a). A plaintiff is disabled under the Act only if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (setting forth five steps in detail). "If a determination can be made at any of the steps that a plaintiff is or is not disabled, evaluation under a subsequent step is not necessary." *Williams*, 844 F.2d at 750. In reviewing a decision of the Commissioner, the Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See id.* The Court's review is based on the record, and the Court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id.* The Court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th

Cir. 2005).  Even if the Court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence.  *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II.      Procedural History and the ALJ's Decision

Plaintiff, then a 30-year-old female, applied for Title II disability insurance benefits and Title XVI supplemental security income benefits on November 5, 2015, alleging a disability onset date of January 1, 1989, later amended to July 31, 2014.  R. 12, 41-42,187-201.  Plaintiff claimed she was unable to work due to conditions including depression, anxiety, panic attacks, post-traumatic stress disorder ("PTSD"), and bipolar disorder.  *See* R. 237.  Plaintiff's claims for benefits were denied initially on December 22, 2015, and on reconsideration on March 25, 2016. R. 72-123.  Plaintiff then requested a hearing before an ALJ, and the ALJ conducted the hearing on October 26, 2017.  R. 34-69.  The ALJ issued a decision on December 5, 2017, denying benefits and finding Plaintiff not disabled because she was able to perform other work existing in the national economy.  R. 12-28.  The Appeals Council denied review, and Plaintiff appealed.  R. 1-3; ECF No. 2.

The ALJ found that Plaintiff's date last insured was December 31, 2017, and that Plaintiff had not engaged in substantial gainful activity since her amended alleged onset date of July 31, 2014.  R. 14.  At step two, the ALJ found that Plaintiff had the severe impairments of affective disorder; anxiety disorder; and alcohol, substance addiction disorder.  *Id.*  He found that Plaintiff's impairments of obesity, gastroesophageal reflux disease ("GERD"), and sleep apnea were non-severe.  R. 15.  At step three, the ALJ found that Plaintiff had no impairment or combination of impairments that was of such severity to result in listing-level impairments.  R. 15-16.  In assessing Plaintiff's mental impairments under the "paragraph B" criteria, the ALJ found that Plaintiff had

mild limitation in the area of adapting or managing oneself, and moderate limitations in the three areas of understanding, remembering, or applying information; interacting with others; and concentrating, persisting, or maintaining pace.  R. 16.

After evaluating the objective and opinion evidence, Plaintiff's statements, and Plaintiff's husband's statements, the ALJ concluded that Plaintiff has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but with the following non-exertional limitations:

> She is limited to simple routine tasks with no complex tasks.  She should have a habituated work setting, object oriented, with only one or two changes in tasks in an 8-hour workday (Habituated: doing the same, or similar tasks throughout the day) (Object oriented: working mostly with things and not people).  She should have only incidental work contact with co-workers or supervisors and no contact with the public.  (Incidental contact: contact with co-workers much like a hotel housekeeper, other people with whom she works, sharing breaks; however, when working, she must work by herself with no teamwork although there may be some coordination).

R. 16.  At step four, the ALJ found that Plaintiff could not perform her past relevant work.  R. 26-27.  Based on the testimony of a vocational expert ("VE"), however, the ALJ found at step five that Plaintiff could perform other unskilled work, such as Commercial Cleaner, Production Assembler, and Table Worker.  R. 27.  The ALJ determined the VE's testimony was consistent with the information contained in the Dictionary of Occupational Titles ("DOT").  R. 28.  Based on the VE's testimony, the ALJ concluded these positions existed in significant numbers in the national economy.  *Id.*  Accordingly, the ALJ concluded Plaintiff was not disabled.

## III.   Issues

Plaintiff raises four points of error in her challenge to the denial of benefits: (1) the ALJ failed to properly evaluate, consider, and weigh the medical evidence at step two; (2) the ALJ's

findings regarding RFC are not supported by substantial evidence; (3) the ALJ did not fully and fairly develop the record; and (4) the ALJ's consistency analysis was flawed.  ECF No. 13.

## IV.     Analysis

### A.     ALJ's Step-Two Analysis Was Adequate

Plaintiff argues that, at step two of the analysis, the ALJ failed to adequately consider a number of Plaintiff's mental impairments, including her PTSD, generalized anxiety disorder, major depressive disorder (severe, recurrent), and bipolar disorder.  Plaintiff's argument is unpersuasive.  While the numerous records she cites support her complaints and diagnoses regarding those conditions (*see, e.g.*, R. 399, 689, 469, 471, 487, 547), Plaintiff cites no records to support any additional functional limitations resulting from those conditions.  It is not the diagnosis, but the resulting functional limitations that determine disability.  *See Coleman v. Chater*, 58 F.3d 577, 579 (10th Cir. 1995).  In addition, the ALJ found Plaintiff's anxiety disorder to be a severe impairment and noted the other above conditions at step three and in his discussion of the RFC.  *See* R. 14-16, 19-25.  The undersigned finds no error in the ALJ's step two assessment of the alleged conditions.  Plaintiff is simply asking the Court to re-weigh the evidence, which is not permitted.  *See Hackett*, 395 F.3d at 1172.

Moreover, given the fact that the ALJ found Plaintiff to have severe impairments and addressed or accounted for the impairments Plaintiff identified in her brief, the issue of whether the ALJ found *all* of Plaintiff's impairments to be severe is legally irrelevant.  *See Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016) ("[F]ailure to find a particular impairment severe at step two is not reversible error when the ALJ finds that at least one other impairment is severe."); *Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("[A]ny error here became harmless when the ALJ

reached the proper conclusion that Mrs. Carpenter could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence.").[1]

### B.      RFC Is Supported by Substantial Evidence

#### 1.      ALJ Reasonably Evaluated the Objective Medical Evidence

Plaintiff argues that the ALJ failed to include non-exertional limitations arising from her mental impairments in the RFC.  Plaintiff points specifically to her complaints and clinical observations of fair concentration or attention; obsessive thinking and negative self-talk; racing thoughts; mood swings; problems sleeping, including nightmares; tearfulness; rapid, pressured, and halting speech; and increased verbal activity.  Plaintiff also contends the ALJ improperly noted she was cooperative at various appointments, because she had had altercations with family members and a person at Wal-Mart, and because she has been agitated, impulsive, and irritable.  In support, Plaintiff cites to numerous records showing her own complaints and clinical diagnoses regarding these various issues.  *See* ECF No. 13 at 8-10 (citing numerous records including R. 430, 485, 488, 641, 686, 715, 737).

Plaintiff's argument is not persuasive.  The ALJ noted Plaintiff's complaints regarding all of the above problems to various care providers throughout the record.  R. 19-25.  He extensively documented Plaintiff's history of treatment for her mental health problems, noting both positive and negative complaints and observations throughout the record.  R. 19-25.  The ALJ documented an incident from May 2015, in which Plaintiff was involved in a domestic altercation with her husband and threatened to kill herself and her husband while he slept.  R. 19-20 (citing R. 383-

---

[1] The bulk of this section consists of case citations accompanied by conclusory arguments that lack any specific link to the facts this case.  The undersigned will not entertain these undeveloped arguments.  *See Femedeer v. Haun*, 227 F.3d 1244, 1255 (10th Cir. 2000) ("Perfunctory complaints that fail to frame and develop an issue are not sufficient to invoke appellate review.") (quotations and brackets omitted)).  In this section, Plaintiff also argues the ALJ erred in assessing the opinion evidence.  ECF No. 13 at 4-5.  These arguments are addressed in Part IV.B.

388.)  Plaintiff was hospitalized and discharged two days later with no suicidal or homicidal ideation.  R. 20 (citing R. 391-402).  The ALJ also documented Plaintiff's report that she had a verbal altercation with another customer at Wal-Mart in July 2016.  R. 22-23 (citing R. 681).  Far from ignoring Plaintiff's various mental issues, the ALJ noted relevant treatment records in detail and accounted for Plaintiff's mental issues in the RFC.  R. 19-25.  Among other limitations, the ALJ limited Plaintiff to simple, routine tasks; incidental contact with co-workers and supervisors; and no public contact.  R. 16.  Plaintiff points to no records that would demonstrate the ALJ was ignoring or minimizing her mental impairments, as the ALJ exhaustively documented her treatment history.  Contrary to Plaintiff's argument, it is not apparent that the ALJ rejected any significantly probative medical evidence concerning Plaintiff's mental functioning capacity.  The ALJ was not required to reproduce every notation in the voluminous record demonstrating her mental impairments, as Plaintiff seems to suggest.

The ALJ reasonably found that the objective medical records did not support non-exertional limitations greater than those than stated in the RFC, and he supported his findings with substantial evidence from the record.  R. 26.  The cited records do not indicate the RFC is unsupported by substantial evidence or that the ALJ's assessment of the medical evidence was flawed.  *See* ECF No. 13 at 8-10.  Plaintiff simply invites the court to re-weigh the evidence, which is not permitted.  *See Hackett*, 395 F.3d at 1172.

### 2.    ALJ Reasonably Evaluated Agency Opinions

Plaintiff argues the ALJ erred by failing to properly analyze the opinion evidence.  Specifically, Plaintiff argues the ALJ improperly granted "some, but not great weight" to the opinions of the agency physicians, Matheen Khan, M.D., and Karl Boatman, M.D., and "substantial weight" to the opinions of the agency psychologists, Kieth McKee, Ph.D., and Lisa Swisher, Ph.D.  R. 25-26.  Plaintiff points to no part of the record that was inconsistent with the

physical or psychological reviewers' findings.  Nor does Plaintiff explain in any detail why the ALJ should have given their opinions less weight.  Instead, she argues generally that agency reviewers are due the least weight of all opinion evidence.  ECF No. 13 at 4.  In this case, the agency reviewers' opinions were the only opinions of record regarding Plaintiff's functional limitations within the relevant time period.  R. 72-123.  The ALJ concluded the physicians' opinions were entitled to "some" weight, because they opined Plaintiff had no medically determinable impairments, but the ALJ considered Plaintiff's obesity and sleep apnea to be medically determinable and non-severe.  R. 25.   The ALJ found the psychological reviewers' opinions were due "substantial" weight, because the longitudinal medical evidence clearly established Plaintiff's mental health impairments. R. 26.  He cited to Plaintiff's history of domestic issues, situational stressors, and financial stressors, he noted that counseling and medication had proven helpful, and he noted that Plaintiff had been able to deal with her issues and handle both childcare and a housing move.  *Id.*  The undersigned identifies no error in this analysis.

Moreover, the regulations provide that ALJs "are not required to adopt any prior administrative medical findings but they must consider this evidence according to [the relevant regulations], as appropriate, because our Federal or State agency medical or psychological consultants are highly qualified and experts in Social Security disability evaluation."  20 C.F.R. §§ 416.913a(b)(1), 404.1513a(b)(1).  *See Flaherty v. Astrue*, 515 F.3d 1067, 1071 (10th Cir. 2007) (a "non-examining physician's opinion is an acceptable medical source, which the ALJ [is] entitled to consider").  Accordingly, Plaintiff's argument fails.

### 3. ALJ Reasonably Evaluated Mental Consultative Examiner's Assessment

Plaintiff argues that the ALJ erred by failing to identify the weight given to the opinions of Michael D. Morgan, Psy.D, who performed a psychological consultative exam in July 2012, in

connection with a previous application for benefits.  R. 365-371.  Plaintiff does not point to any particular opinion from Dr. Morgan that the ALJ should have weighed, and she does not suggest how assigning any particular weight to Dr. Morgan's opinions would affect the RFC or the finding regarding disability.

Plaintiff's argument is not persuasive.  The ALJ devoted five full paragraphs to summarizing Dr. Morgan's report, including his objective mental status findings and his conclusion that Plaintiff's signs and symptoms were "consistent with an anxiety disorder not otherwise specified likely stemming from the combined effects of recreational substance abuse, unresolved issues of origin, being unemployed and ongoing financial difficulties." R. 18-19 (citing R. 365-371).  The ALJ also noted Dr. Morgan's prognosis that Plaintiff could achieve a higher level of psychological functioning in less than one year.  R. 19 (citing R. 369).  The ALJ's evaluation of Dr. Morgan's examination findings and prognosis fell under the heading of "objective medical evidence," suggesting that the ALJ did not consider Dr. Morgan's assessment and prognosis to be opinion evidence regarding functional limitations that required express weighing.  R. 18.  Nonetheless, it is evident that the ALJ did not disregard Dr. Morgan's findings and considered them in determining the RFC.

Plaintiff fails to explain how the ALJ failed to account for Dr. Morgan's findings and prognosis in determining the RFC.  While the ALJ did not expressly assign a weight to Dr. Morgan's assessments, it is clear from the decision that the ALJ considered Dr. Morgan's evaluation in establishing the mental RFC.  Moreover, Dr. Morgan's examination took place in July 2012, two years before the alleged onset date of July 31, 2014.  R. 365.  At the hearing, Plaintiff's counsel himself argued Dr. Morgan's report was "stale." R. 37.  Accordingly, any error in the ALJ's failure to assign a particular weight to Dr. Morgan's opinion is harmless.  *See Shinseki*

*v. Sanders*, 556 U.S. 396, 409-10 (2009) (burden of showing harmful error normally falls upon party attacking agency's determination).

### C.      ALJ Adequately Developed the Record

Plaintiff contends that the ALJ should have further developed the record by obtaining a more recent medical opinion regarding Plaintiff's mental functioning limitations.  Plaintiff argues that Dr. Morgan's examination and assessment, given in July 2012, was "stale and of no current value" by the time the ALJ rendered his decision in December 2017.[2]  ECF No. 13 at 10.  Plaintiff also points out that counsel argued at the hearing that the report was "stale."  R. 37.

The ALJ has a "basic obligation" in every social security case to develop the record consistent with the issues raised.  *Cowan v. Astrue*, 552 F.3d 1182, 1187 (10th Cir. 2008) (quoting *Henrie v. U.S. Dep't of Health & Human Servs.*, 13 F.3d 359, 360-61 (10th Cir.1993)).  The ALJ's duty "is one of inquiry, ensuring that the ALJ is informed about facts relevant to his decision and learns the claimant's own version of those facts."  *Id.*  The ALJ "does not have to exhaust every possible line of inquiry in an attempt to pursue every potential line of questioning"; instead, the "standard is one of reasonable good judgment."  *Hawkins v. Chater*, 113 F.3d 1162, 1168 (10th Cir. 1997).

Moreover, an ALJ generally has "broad latitude in ordering consultative examinations." *Hawkins*, 113 F.3d at 1166.  An ALJ "may purchase a consultative examination to try to resolve an inconsistency in the evidence or when the evidence as a whole is insufficient" to allow the ALJ to make "a determination or decision on [the claimant's] claim."   20 C.F.R. §§ 404.1519a(b),

---

[2] This argument is somewhat confusing, given that Plaintiff appears to argue in another section of the brief that the ALJ should have paid greater attention to Dr. Morgan's assessment by expressly assigning it a weight.

416.919a(b).  *See* 20 C.F.R. §§ 404.1519a(b), 416.919a(b) (providing examples of instances that may require a consultative exam).

The undersigned finds the ALJ adequately developed the record and rejects Plaintiff's arguments that a second consultative exam was required.  The administrative record is sufficiently clear and consistent.  Plaintiff argues her mental health symptoms have increased since 2012, and she suggests Dr. Morgan's assessment was deficient because he reviewed only one mental health record in connection with the consultative exam.  ECF No. 13 at 11.  However, the ALJ simply summarized Dr. Morgan's findings and prognosis as objective evidence, and he did not clearly rely on Dr. Morgan's examination as the sole basis for the RFC.  R. 18-19.  The ALJ even acknowledged at the hearing that Dr. Morgan's report and other mental health records from 2012 "may be stale as far as current evaluative consideration."  R. 38.  To the extent Plaintiff's mental conditioned worsened between 2012 and 2017, the ALJ noted as much.  *See, e.g.*, R. 19-20 (summarizing Plaintiff's psychiatric hospitalization in May 2015 following altercation with husband while intoxicated and resulting in threats of suicide and homicide), 22 (describing Plaintiff's account of verbal altercation with another customer at Wal-Mart in July 2016), 23 (describing Plaintiff's report of having two "flip-outs" in November 2016).

An updated consultative examination was not required.  Plaintiff points to no material conflict in the medical evidence, inconclusive treatment notes or tests, or untreated diagnoses that require additional explanation.  The record amply documents Plaintiff's history of mental health treatment between 2015 and 2017.  R. 383-840.  Accordingly, the ALJ was not required to order a second psychological consultative examination or obtain other testing to assess Plaintiff's mental limitations.  *See generally Cowan*, 552 F.3d at 1187 (finding "no need" to develop record with

consultative exam because "sufficient information existed" for ALJ to make disability determination).

Moreover, contrary to Plaintiff's argument, the ALJ did not need a specific "RFC" opinion from an examining doctor to assess Plaintiff's functional limitations. *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) (explaining that "there is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question"); *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004) ("The ALJ, not a physician, is charged with determining a claimant's RFC."); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (explaining that, while an ALJ considers medical opinions in assessing RFC, the final responsibility for determining an RFC is reserved to the ALJ). Plaintiff's desire for a more developed record is not an adequate reason to re-weigh the evidence or remand an ALJ's decision that is supported by substantial evidence.

### D.    ALJ's Consistency Analysis Was Supported by Substantial Evidence

Plaintiff argues the ALJ's consistency analysis was improper. In evaluating a claimant's symptoms, the ALJ must determine whether the claimant's statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and other evidence of record. SSR 16-3p, 2016 WL 1119029, at *7. If they are consistent, then the ALJ "will determine that the individual's symptoms are more likely to reduce his or her capacities to perform work-related activities." *Id.* If they are inconsistent, then the ALJ "will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities." *Id.* Factors the ALJ should consider in determining whether a claimant's pain is in fact disabling include the claimant's attempts to find relief and willingness to try any treatment prescribed; a claimant's regular contact with a doctor; the possibility that psychological

disorders combine with physical problems; the claimant's daily activities; and the dosage, effectiveness, and side effects of the claimant's medication. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012); *see also* SSR 16-3p at *7 (listing similar factors); 20 C.F.R. § 404.1529(c)(3).[3]

Consistency findings are "peculiarly the province of the finder of fact," and courts should "not upset such determinations when supported by substantial evidence." *Cowan v. Astrue*, 552 F.3d 1182, 1190 (10th Cir. 2008) (quoting *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995)). As long as the ALJ sets forth the specific evidence he relies on in evaluating the consistency of the claimant's subjective complaints with other evidence, the ALJ "need not make a formalistic factor-by-factor recitation of the evidence." *Keyes-Zachary*, 695 F.3d at 1167 (quotations omitted). "[C]ommon sense, not technical perfection, is [the reviewing court's] guide." *Id.*

Here, the ALJ found Plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. R. 17. The ALJ explained that he reached this consistency finding because (1) she was maintained on an outpatient basis with counseling and medication management, apart from one short-term psychiatric hospitalization in May 2015 following the incident with her husband while intoxicated; (2) the longitudinal medical records documented "largely unremarkable mental status examinations," despite her reports of "flipping out" or increased depression/anxiety; (3) she "often denied medication side effects"; (4) it appeared situational stressors, including her husband's job loss, financial stressors, and mother-in-law issues exacerbated Plaintiff's reported

---

[3] This evaluation, previously termed the "credibility" analysis, is now termed the "consistency" analysis. *See* SSR 16-3p (superseding SSR 96-7p). In practice, there is little substantive difference between a "consistency" and "credibility" analysis. *See Brownrigg v. Berryhill*, 688 F. App'x 542, 545-46 (10th Cir. 2017) (finding that SSR 16-3p was consistent with prior approach taken by Tenth Circuit). Therefore, Tenth Circuit decisions regarding credibility analyses remain persuasive authority.

symptoms; and (5) she consistently denied suicidal and homicidal ideation despite her numerous stressors. R. 17-18.

Plaintiff argues generally that the ALJ's consistency analysis failed. Most specifically, she argues that two of the ALJ's stated reasons are unsupported and therefore invalid reasons for his consistency determination.[4] First, Plaintiff argues the ALJ erred by noting that her mental status exams were largely unremarkable, pointing to her argument made above in Part IV.B.1, regarding the RFC determination. For the same reasons explained above in Part IV.B.1, Plaintiff's argument is not compelling, and the undersigned identifies no error in the consistency analysis on this basis. As the ALJ noted, Plaintiff's mental status examinations were routinely normal, and the ALJ did note and account for her anxiety, social altercations, and other mental issues. *See, e.g.*, R. 26 (summarizing Plaintiff's medical history). Medical providers regularly noted mental status observations such as: alert and oriented, open and cooperative, normal or pleasant mood, coherent and logical speech, well-organized thoughts, denial of suicidal or homicidal ideation, and denial of hallucinations or delusions. *See, e.g.*, R. 406-407, 411, 414, 420, 417-418, 420, 425, 429-430, 432, 467, 469, 471, 486, 489-490, 495, 498, 501, 505, 509, 519-520, 547, 550, 634, 641, 649, 657, 659, 667, 671, 676, 681, 688, 691, 697, 701, 707, 712, 715, 721, 725, 728, 734, 737, 763, 766, 772, 775, 781, 784, 795, 806, 820, 823, 828, 834-845, 839-840. *See Megginson v. Astrue*, 489 F. App'x 260, 263 (10th Cir. 2012) (affirming ALJ's adverse credibility finding where clinical examinations "routinely showed . . . normal" findings that undermined claimant's allegations).

Second, Plaintiff argues the ALJ erred by noting she often denied medication side effects. Plaintiff points primarily to her own and her husband's reports that she experienced side effects

---

[4] A portion of this section consists of conclusory and incoherent arguments that are insufficiently developed for the undersigned to review, and they are therefore waived. *See Femedeer*, 227 F.3d at 1255.

such as tiredness, anger and edginess, shaking, and mood swings.  *See* R. 250, 266, 306, 310.  Plaintiff points to one example of a report of a medication side effect to her care provider: in October 2016, Plaintiff reported to her nurse that Buspar caused "some irritability at full dose."  R. 705.  It was recommended that she decrease Buspar to a half-dose.  R. 708.  At the next visit in November 2016, Plaintiff reported she had stopped taking Buspar.  R. 713.  Plaintiff also points out a notation that Plaintiff should decrease Lamictal "due to elevated liver enzymes" in June 2017.  R. 782.  However, neither of these examples contradicts or overwhelms the ALJ's finding that Plaintiff "often denied medication side effects."  To the contrary, the ALJ's finding was well-supported in the record.  *See* R. 518 (denied side effects in August 2015), 546 (denied side effects and reported doing well with current medications in December 2015), 649 (reported minimal side effects of fatigue and changes in food consumption in February 2016), 656 (no side effects noted in March 2016), 675 (reported no problems with medications in June 2016), 695 (reported dry mouth caused by certain medications but no adverse effects from Wellbutrin in September 2016), 723 (reported no adverse response to Abilify in December 2016), 819 (reported no adverse response to Abilify on January 3, 2017), 833 (reported no adverse response to Abilify on Jan 31, 2017).  *See also Barnett v. Apfel*, 231 F.3d 687, 690 (10th Cir. 2000) (finding claimant's failure to report symptoms to physician was appropriate factor to support credibility/consistency determination).

In sum, Plaintiff's consistency arguments are unavailing, and the ALJ's discussion of Plaintiff's subjective complaints and the objective evidence satisfies SSR 16-3p.

## RECOMMENDATION

The undersigned **RECOMMENDS** that the Commissioner's decision be **AFFIRMED.**

## OBJECTION

In accordance with 28 U.S.C. § 636(b) and Federal Rule of Civil Procedure 72(b)(2), a party may file specific written objections to this report and recommendation. Such specific written objections must be filed with the Clerk of the District Court for the Northern District of Oklahoma by March 27, 2020.

If specific written objections are timely filed, Federal Rule of Civil Procedure 72(b)(3) directs the district judge to

> determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

*Id.*; *see also* 28 U.S.C. § 636(b)(1). The Tenth Circuit has adopted a "firm waiver rule" which "provides that the failure to make timely objections to the magistrate's findings or recommendations waives appellate review of both factual and legal questions." *United States v. One Parcel of Real Property*, 73 F.3d 1057, 1059 (10th Cir. 1996) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)). Only a timely specific objection will preserve an issue for *de novo* review by the district court or for appellate review.

**SUBMITTED** this 13th day of March, 2020.

_____
**JODI F. JAYNE, MAGISTRATE JUDGE**
**UNITED STATES DISTRICT COURT**