# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

ANGEL N.R.,                            )
                                       )
       **Plaintiff**,              )
                                       )
v.                                     )   Case No. 18-CV-0544-CVE-JFJ
                                       )
ANDREW SAUL, Commissioner of Social    )
Security Administration,               )
                                       )
       **Defendant.**             )

## OPINION AND ORDER

Before the Court is the report and recommendation (Dkt. # 17) of Magistrate Judge Jodi F. Jayne recommending that the Court affirm the decision of the Commissioner of the Social Security Administration to deny plaintiff's claim for disability and supplemental disability benefits. Plaintiff timely filed an objection (Dkt. # 18) to the report and recommendation, and she seeks remand for further review. Defendant did not respond to the objection. The Court has reviewed the record and has conducted a de novo review of those portions of the findings or recommendations to which objection was made.

### I.

### A.

On November 5, 2015, plaintiff applied for Title II disability insurance benefits and Title XVI supplemental security income benefits, alleging disability beginning on January 1, 1989. Dkt. # 10-2, at 13. With the advice of counsel, plaintiff amended her date of disability to July 31, 2014, her last day of work. Id. Plaintiff claimed that she was unable to work due to depression, anxiety, panic attacks, post traumatic stress disorder (PTSD), and bipolar disorder. Dkt. # 10-6, at 22.

On October 26, 2017, plaintiff, represented by counsel, appeared at a hearing before an administrative law judge (ALJ). Dkt. # 10-2, at 13. Plaintiff was thirty-two years old at the time of the hearing. Id. at 40. Plaintiff is married, and has a daughter who was four years old at the time. Id. at 40-41. Plaintiff's husband works full time. Id. at 42. Plaintiff graduated from high school, which is her highest level of education. Id. at 43.

Plaintiff was on Seroquel, and then she switched to Lamictal. Id. at 48. She testified that she experiences side effects such as weight gain, memory loss, and fatigue. Id. Plaintiff testified that the biggest health condition she faces is depression. Id. at 49. She also testified that she has bipolar disorder. Id. Additionally, she testified that she has anxiety, panic attacks, and PTSD. Id. at 50. When her depression is at its severest, about thirteen days per month, she does not eat or get out of bed, and she sleeps much more than the rest of the month. Id. at 50-51. During these phases, her husband or his grandmother takes care of her daughter. Id. at 51. She also testified that her bipolar disorder causes her mood swings. Id. at 52. She has trouble focusing. Id. at 53-54. Plaintiff testified that her anxiety causes her to feel "completely helpless." Id. at 55. She testified that her anxiety is triggered when she goes grocery shopping with her husband, does anything outside, or drives a car. Id.

Plaintiff sees a counselor for her mental disorders about two times per month. Id. at 55-56. Plaintiff testified that her PTSD causes her to cry nonstop and be hopeless. Id. at 57-58. She thinks about the events that causes her PTSD almost daily. Id. at 58. She also replays events in her head like "a broken record." Id. She does not sleep very well. Id. at 59. She "acts out" in her sleep about two to three times per week. Id. She testified that she had suicidal ideation as recently as 2015. Id. at 60-61.

## B.

At the disability hearing, the ALJ called vocational expert (VE) Jennifer Lynn Sullivan, certified rehabilitation counselor, to testify about plaintiff's ability to work. Id. at 64; Dkt. # 10-6, at 117. The VE first testified that plaintiff had been a short-order cook (Dictionary of Occupational Titles (4th ed. Rev. 1991) [DOT] § 313.374-014), which is light, semi-skilled work with an SVP of 3. Dkt. # 10-2, at 65. Plaintiff has also been a Cashier II (DOT § 211.462-010), which is light, unskilled work with an SVP of 2. Id. Plaintiff has been a cocktail waitress (DOT § 311.477-018), which is light, semi-skilled work with an SVP of 3. Id. She has also been a bartender (DOT § 312.474-010), which is light, semi-skilled work with an SVP of 3. Id. The ALJ next asked the VE a series of hypotheticals. Id. The ALJ asked the VE

> to assume a thirty-two-year-old individual who has a high school education and work experience . . . [with] no physical limitations. [The] person is limited to simple and routine tasks and no complex tasks along a full range of unskilled work provided [it] does not exceed the other limitations I'm about to give. She should have a relatively . . . habituated work setting, and it should be object-oriented. . . . [B]y habituated, I'm talking about doing the same tasks throughout the day. She might have one or two changes of tasks during an eight-hour period but should not have anything more than that. By object-oriented, I mean that she should be working with things or non-people. Just . . . basically, practically working with . . . things, whether it's paperwork or objects as opposed to working with people. She could have incidental contact with co-workers and supervisors on work-related things; otherwise, she could get along with them on a superficial basis. She should have no contact with the public as part of her job duties. With those restrictions, would that person—and let, let me give you an example of incidental since I gave incidental. She might have contact with co-workers, let's say, a hotel housekeeper, something like that. She may have other people with whom she works. They may share breaks and things like that, but when it actually comes to work, they're working by themselves. Each one has their own room. They may have to ask one do you have an extra box of Kleenex or something like that, but it's very, very—doesn't require any real teamwork; although, there may be some coordination. But, just incidental contact like that. . . .

3

Id. at 66-67. The ALJ asked the VE if the hypothetical person could perform plaintiff's past relevant work, and the VE answered that he or she could not. Id. at 67. However, the VE stated that other jobs exist in the national economy that the hypothetical person could perform. Id. These jobs include commercial cleaner (DOT § 381.687-018, 177,000 jobs in the national economy), which is a medium, unskilled job with an SVP of 2; a production assembler (DOT § 706.687-010, 297,000 jobs in the national economy), which is light, unskilled work with an SVP of 2; and a table worker (DOT § 739.687-182, 29,000 jobs in the national economy), which is sedentary, unskilled work with an SVP of 2. Id. The ALJ next asked if the individual, as a result of psychological flares such as depression, anxiety, panic, or mania could perform plaintiff's past relevant work, or any employment. Id. at 67-68. The VE answered that the hypothetical person could not. Id. at 68. The VE stated that the level of absenteeism associated with these conditions is not included in the DOT. Id.

## C.

On December 5, 2017, the ALJ issued a written decision finding plaintiff not disabled. Id. at 29. The ALJ first found that plaintiff has not engaged in substantial gainful activity since July 31, 2014. Id. at 15. The ALJ also found that plaintiff had the severe impairments of affective disorder, anxiety disorder, and alcohol, substance addiction disorder. Id. The ALJ next found that plaintiff does not have an impairment or combination of impairments that meet or medically equal the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. Id. at 16. The ALJ excluded plaintiff's other claimed impairments due to her history of counseling and improved symptoms. See id. at 19-26. The ALJ addressed plaintiff's a residual functional capacity (RFC):

> [T]he claimant has the [RFC] to perform a full range of work at all exertional levels but with the following nonexertional limitations: She is limited to simple routine tasks with no complex tasks. She should have a habituated work setting, object oriented, with only one or two changes in tasks in an 8-hour workday (Habituated: doing the same, or similar tasks throughout the day) (Object oriented: working mostly with things and not people). She should have only incidental work contact with co-workers or supervisors and no contact with the public. (Incidental contact: contact with co-workers much like a hotel housekeeper, other people with whom she works, sharing breaks; however, when working, she must work by herself with no teamwork although there may be some coordination).

Id. at 17.

In his RFC determination, the ALJ considered plaintiff's testimony, but found it inconsistent with the record. Id. at 18. The ALJ noted objective medical evidence showing that plaintiff had been diagnosed with mental impairments, but that her impairments had improved over time. Id. at 19-26. For example, the ALJ accounted in detail plaintiff's counseling visits with Deborah Vanderpool, licensed professional counselor, one of which showed that plaintiff's "[t]arget symptoms were anxiety, worry, racing thoughts[,] and communication differences." Id. at 20. However, plaintiff "denied suicidal or homicidal ideation," her "[t]houghts were well organized," her "[a]ffect was appropriate," "[s]he denied auditory or visual hallucinations," and she "and her spouse made good progress in the session . . . ." Id. In another example, the ALJ noted plaintiff's December 3, 2015, appointment with Melissa McIntosh, M.D., in which plaintiff "was feeling well," she "was doing well with current medications," and she "denied anxiety or depression." Id. at 22.

The ALJ also considered a third party statement from plaintiff's husband, which he accorded "some weight." Id. at 19. In the third party statement, it was noted that plaintiff "could not spend time around other people without experiencing anxiety and panic attacks." Id. She also had depression. Id. However, she is "a great mom and wife and keeps [the] house clean." Id. She has

no issues with personal care, she grocery shops monthly, she prepares meals two to three times weekly, she watches television and cares for her daughter, and she can pay bills, count change, handle a savings account, and use a checkbook. Id.

The ALJ noted opinion evidence from state agency physicians and psychologists. Id. at 26-27. The ALJ accorded "substantial weight" to the psychologists' findings, because plaintiff "managed her impairments with outpatient counseling and medication . . . ." Id. at 27. The ALJ noted that counseling had proven helpful. Id. Further, plaintiff "denied suicidal or homicidal ideation despite her life stressors, [and s]he has been able to deal with her relationship issues, move to low income housing[,] and parent[] a young child." Id. The ALJ found that plaintiff is unable to perform any past relevant work, but that she can perform the jobs of commercial cleaner, production assembler, and table worker. Id. at 27-28.

On August 18, 2018, the Appeals Council denied plaintiff's request for review of the ALJ's decision. Id. at 2. Plaintiff thereafter sought judicial review. The Court referred the case to the magistrate judge, who entered a report and recommendation recommending that the Court affirm the Commissioner's decision. Dkt. # 17, at 1, 16.

## II.

Without consent of the parties, the Court may refer any pretrial matter dispositive of a claim to a magistrate judge for a report and recommendation. FED. R. CIV. P. 72(b). However, the parties may object to the magistrate judge's recommendation within fourteen days of service of the recommendation. Schrader v. Fred A. Ray, M.D., P.C., 296 F.3d 968, 975 (10th Cir. 2002); Vega v. Suthers, 195 F.3d 573, 579 (10th Cir. 1999). The Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection

is made." 28 U.S.C. § 636(b)(1). The Court may accept, reject, or modify the report and recommendation of the magistrate judge in whole or in part. FED. R. CIV. P. 72(b).

The Court may not reweigh the evidence or substitute its judgment for that of the ALJ but, instead, reviews the record to determine if the ALJ applied the correct legal standard and if his decision is supported by substantial evidence. Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." O'Dell v. Shalala, 44 F.3d 855, 858 (10th Cir. 1994). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." Hamlin v. Barnhart, 365 F.3d 1208, 1214 (10th Cir. 2004). The Court must meticulously examine the record as a whole and consider any evidence that detracts from the Commissioner's decision. Washington v. Shalala, 37 F.3d 1437, 1439 (10th Cir. 1994).

The Social Security Administration has established a five-step process to review claims for disability benefits. See 20 C.F.R. § 404.1520. The Tenth Circuit has outlined the five step process:

> Step one requires the agency to determine whether a claimant is "presently engaged in substantial gainful activity." [Allen v. Barnhart, 357 F.3d 1140, 1142 (10th Cir. 2004)]. If not, the agency proceeds to consider, at step two, whether a claimant has "a medically severe impairment or impairments." *Id*. An impairment is severe under the applicable regulations if it significantly limits a claimant's physical or mental ability to perform basic work activities. *See* 20 C.F.R. § 404.1521. At step three, the ALJ considers whether a claimant's medically severe impairments are equivalent to a condition "listed in the appendix of the relevant disability regulation." *Allen*, 357 F.3d at 1142. If a claimant's impairments are not equivalent to a listed impairment, the ALJ must consider, at step four, whether a claimant's impairments prevent her from performing her past relevant work. *See id*. Even if a claimant is so impaired, the agency considers, at step five, whether she possesses the sufficient residual functional capability to perform other work in the national economy. *See id.*

Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).

## III.

### A.

Plaintiff argues that she was diagnosed with additional medical conditions that the ALJ failed to discuss, such as PTSD, bipolar disorder, generalized anxiety disorder (GAD), and major depressive disorder (MDD). Dkt. # 18, at 1. Plaintiff focuses her argument on PTSD specifically. Id.

Contrary to plaintiff's argument, the ALJ did discuss these disorders in the objective medical evidence. See Dkt. # 10-2, at 19-26. The ALJ did not specifically give this evidence weight, but he did consider it. Although the ALJ noted plaintiff's diagnoses of PTSD and other disorders, he noted doctors' visits and counseling in which plaintiff's mood was reported as improved, and in which she was diagnosed as having no anxiety or depression. See, e.g., id. at 21. Moreover, the ALJ found that plaintiff had other severe impairments, and he need not discuss every impairment if he finds at least one impairment to be severe. See Allman v. Colvin, 813 F.3d 1326, 1330 (10th Cir. 2016) ("[F]ailure to find a particular impairment severe at step two is not reversible error when the ALJ finds that at least one other impairment is severe."). The Court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. See Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005) ("We consider whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases, but we will not reweigh the evidence or substitute our judgment for the Commissioner's.") (internal quotation omitted).

Plaintiff argues that these alleged errors contributed to an improper hypothetical question and RFC. Dkt. # 18, at 2. Plaintiff argues that all impairments should "be assessed as severe or nonsevere as required." Id.

First, plaintiff does not cite any legal authority for this proposition, and it is contrary to Tenth Circuit precedent. See Hackett, 395 F.3d at 1172. The Court will not fulfill counsel's role in developing arguments on appellate review.[1] Second, contrary to plaintiff's argument, the ALJ did consider all impairments; however, he did not give each impairment the same weight because these impairments were not supported by the medical evidence. See, e.g., Dkt. # 10-2, at 22 (noting an August 31, 2015, examination with plaintiff's primary care physician in which plaintiff displayed "no anxiety or depression"). The ALJ need not have found every mental impairments severe if he at least found one impairment severe. See Allman, 813 F.3d at 1330.

Plaintiff argues that the ALJ should have found more severe impairments because "improvement on medication does not mean that a condition is necessarily controlled or stable and does not mean [plaintiff] is not as functionally limited as she claims." Dkt. # 18, at 3. Plaintiff then asserts that the magistrate judge and ALJ admit that her mental health worsened over time, and she cites "infra." Id.

The Court finds no such admissions in either plaintiff's brief or the cited sources. However, even assuming the ALJ did admit that plaintiff's mental condition worsened over time, the ALJ has great discretion in formulating the RFC, and the Court will not substitute its judgment for that of the ALJ. See Hackett, 395 F.3d at 1173 ("Plaintiff's argument to the contrary constitutes an invitation to this court to engage in an impermissible reweighing of the evidence and to substitute our judgment for that of the Commissioner, an invitation we must decline.").

---

[1] Throughout her brief, plaintiff states legal conclusions followed by cases with no explanation. Further, many of these cases are inapplicable or do not support her position. The Court will not consider such arguments. See Femedeer v. Haun, 227 F.3d 1244, 1255 (10th Cir. 2000) ("Perfunctory complaints that fail to frame and develop an issue are not sufficient to invoke appellate review.") (quotations and brackets omitted).

**B.**

Plaintiff argues that the ALJ failed to weigh the opinions of Michael D. Morgan, Psy. D., her psychological consultative examiner. Dkt. # 18, at 3. However, the ALJ devoted five full paragraphs summarizing Dr. Morgan's report, including his objective mental status findings and his conclusion that plaintiff's signs and symptoms were "consistent with an anxiety disorder not otherwise specified likely stemming from the combined effects of recreational substance abuse, unresolved issues of origin, being unemployed[,] and ongoing financial difficulties." Dkt. # 10-2, at 19-20. The ALJ also noted Dr. Morgan's prognosis that plaintiff could achieve a higher level of psychological functioning in less than one year. Id. at 20. It is evident from this detailed discussion that the ALJ did consider Dr. Morgan's opinions, and they do not support plaintiff's position. See Shinseki v. Sanders, 556 U.S. 396, 409-10 (2009) (holding that the burden of showing harmful error normally falls upon the party attacking the agency's determination).

**C.**

Plaintiff argues that the ALJ failed to adequately weigh her subjective reports and the objective medical evidence. Dkt. # 18, at 4. The ALJ, contrary to plaintiff's argument, considered her subjective reports. See Dkt. # 10-2, at 27 ("I do not discount all of claimant's complaints."). He further discussed the objective medical evidence at length. See id. at 19-26. In fact, he devoted eight pages to these findings. Plaintiff argues that she "was symptomatic at almost every appointment." Dkt. # 18, at 4. While plaintiff claimed to be symptomatic at many of her appointments, she was not always found to be so. Plaintiff argues that the ALJ discounted medical evidence that was favorable to her. Dkt. # 18, at 5. However, this is contrary to the ALJ's decision. Most of the evidence in the

record establishes that plaintiff is not disabled, and the Court will not substitute plaintiff's judgment for that of the ALJ. See Hackett, 395 F.3d at 1173.

**D.**

Plaintiff argues that the ALJ should have ordered a new examination, because her mental condition worsened between 2012 and 2017. Dkt. # 18, at 5. The ALJ generally has "broad latitude in ordering consultative examinations." Hawkins . Chater, 113 F.3d 1162, 1166 (10th Cir. 1997). An ALJ "may purchase a consultative examination to try to resolve an inconsistency in the evidence or when the evidence as a whole is insufficient" to allow the ALJ to make "a determination or decision on [plaintiff's] claim." 20 C.F.R. §§ 404.1519a(b), 416.919a(b).

Here, a second consultative exam was not required. The administrative record is clear and consistent. Plaintiff alleges no material conflict in the medical evidence, inconclusive treatment notes or tests, or untreated diagnoses that require additional explanation. The record reflects that plaintiff's medical evaluations were adequate for the ALJ to find plaintiff not disabled. See Cowan v. Astrue, 552 F.3d 1182, 1187 (10th Cir. 2008) (finding "no need" to develop the record with consultative exam because "sufficient information existed" for the ALJ to make a disability determination). Further, the ALJ did not need a specific RFC opinion from an examining doctor to assess plaintiff's functional limitations. Chapo v. Astrue, 682 F.3d 1285, 1288 (10th Cir. 2012) (explaining that "there is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question"); Howard v. Barnhart, 379 F.3d 945, 949 (10th Cir. 2004) ("The ALJ, not a physician, is charged with determining a claimant's RFC."); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (explaining that, while

11

an ALJ considers medical opinions in assessing an RFC, the final responsibility for determining an RFC is reserved to the ALJ).

## E.

Finally, plaintiff makes a consistency argument that her subjective statements need not be consistent with the record for the ALJ to accord them weight. Dkt. # 18, at 6. She argues that the ALJ ignored "the many times [plaintiff's] medications had to be changed or adjusted." Id.

In evaluating a claimant's symptoms, the ALJ must determine whether the claimant's statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and other evidence of record. SSR 16-3p, 2016 WL 1119029, at *7. If they are consistent, then the ALJ "will determine that the individual's symptoms are more likely to reduce his or her capacities to perform work-related activities." Id. If they are inconsistent, then the ALJ "will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities." Id.

Here, the ALJ considered plaintiff's symptoms. See Dkt. # 10-2, at 27. However, he determined that she "is capable of performing habituated simple routine task because the medical evidence shows that outpatient counseling and medication management is effective." Id.

In sum, the ALJ fulfilled his statutory duty to determine that plaintiff's symptoms are less likely to reduce her ability to perform relevant work. The Court finds that the magistrate judge properly found that the ALJ evaluated the evidence pertaining to plaintiff's physical and psychological impairments and, therefore, the Commissioner's decision should be affirmed.

**IT IS THEREFORE ORDERED** that the report and recommendation (Dkt. # 17) is **accepted**, and the Commissioner's decision is **affirmed**. A separate judgment is entered herewith.

**DATED** this 13th day of April, 2020.

*/s/ Claire V. Eagan*
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE